The STATE of Texas, State,

v.

**HALTOM MEDICAL INVESTORS, L.L.C. d/b/a Haltom Convalescent Center, Appellee.**

No. 2–04–013–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 9, 2004.

Greg Abbott, Attorney General of Texas, Barry R. McBee, First Assistant Attorney General, Edward D. Burbach, Deputy Attorney General for Litigation, Paul D. Carmona, Chief, Consumer Protection & Public Health Division, Candace Collins, Assistant Attorney General, Austin, for State.

Brown & Carls, L.L.P., Tracy L. Harting, Kelly A. McDonald, Austin, for Appellee.

PANEL B: HOLMAN, WALKER, and McCOY, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

The State of Texas, Appellant, appeals from an order granting Appellee Haltom Medical Investors, L.L.C. d/b/a Haltom Convalescent Center's plea to the jurisdiction and dismissing the State's case with prejudice. In two issues, the State claims that 1) the trial court erred by failing to recognize that section 2.60(b) of House Bill 2292 is a specific savings clause and incorrectly applied the general savings clause, and 2) the Texas Department of Human Services' (DHS) assessment of both federal and state civil penalties was made under the prior version of section 242.070 of the health and safety code before the new amendment took effect on September 1, 2003, and the savings clause directly impacts those penalties assessed prior to September 1, 2003. We disagree, and therefore, affirm the trial court's judgment.

## BACKGROUND

DHS is the state agency that regulates nursing facilities by ensuring minimum standards of care regarding health, safety, and comfort of the nursing home residents.[1] There are several ways that DHS regulates these facilities: it requires the facilities obtain a license; conducts inspections, surveys, and investigations of the facilities; and enforces rules and minimum standard regulations.[2] After DHS completes its inspection, a regional enforcement team meets to determine if it believes that a violation has occurred and what penalties, if any, should be recommended. DHS enforces its regulations through administrative penalties,[3] federal civil money penalties, and state civil penalties.[4] It is not the regional team, but DHS state office staff or the Centers for Medicare and Medicaid Services (CMS) that impose the penalties against a facility. If the facility does not agree with the recommendation, it has the right to appeal.[5]

The three types of penalties are assessed differently. Administrative penalties are assessed by the DHS commissioner or the commissioner's designee only after "the person charged with the violation consents to the administrative penalty recommended by the department, does not timely respond to a notice sent under Subsection (c) or (e), or fails to correct the violation to the department's satisfaction."[6] Federal civil money penalties are based on an alleged certification or Medicare/Medicaid violation. The regional enforcement team then makes its recommendation to CMS, which either accepts, rejects, or modifies the recommendation. It is CMS that notifies a nursing facility that a specific penalty has been recommended to be imposed. Haltom contends that only after the nursing facility has either consented to the penalty or all appeal rights have been exhausted can a federal civil money penalty be assessed. Based on an alleged licensure violation, the DHS regional enforcement team can recommend state civil penalties. If the

---

1. TEX. HEALTH & SAFETY CODE ANN. § 242.002(4) (Vernon 2001), § 242.037 (Vernon Supp. 2004–05); 40 TEX. ADMIN. CODE § 19.2004(a) (2002) (Social Services and Assistance).

2. TEX. HEALTH & SAFETY CODE ANN. ch. 242 (Vernon 2001 & Supp.2004–05).

3. Id. § 242.066 (Vernon 2001).

4. Id. § 242.065 (Vernon Supp.2004–05).

5. 42 C.F.R. §§ 488.330(d)(4), (e).

6. TEX. HEALTH & SAFETY CODE ANN. § 242.067(g) (Vernon 2001).

regional director agrees that a state civil penalty should be sought, the nursing facility is notified that DHS is recommending referral to the Attorney General's Office for imposition of civil penalties.[7]

This case focuses on state civil penalties. In 2002, with residents residing in the facility, Haltom decided to renovate. In July 2002, DHS inspected the facility and found numerous violations. Specifically, the violations included numerous safety system devices that were inadequate such as sprinkler system coverage, fire escape pathways, fire barriers, and exposed construction materials, which posed health and safety hazards for the residents. DHS made a recommendation to CMS that a $3,050 per-day federal civil money penalty be imposed on Haltom for the violations. CMS agreed with the findings and the penalty recommended by DHS. Thereafter, Haltom waived its right to appeal, and CMS sent notification to Haltom of the acceptance of its waiver of appeal rights. The federal civil money penalty in the amount of $28,350 was reduced to $18,427.50 and paid by Haltom. On January 14, 2003 DHS referred this matter to the Office of the Attorney General of Texas (OAG). The letter sent to the OAG stated "Please file suit for civil penalties and any other relief which may be appropriate." On September 17, 2003 the State of Texas filed suit on behalf of DHS seeking state civil penalties against Haltom under chapter 242 of the Texas Health and Safety Code. Haltom filed a plea to the jurisdiction, which the court granted and the court dismissed the State's suit with

prejudice. Thereafter, the State filed this appeal.

In this case, we are presented with two overriding issues, the proper interpretation of the term "assess" found in section 242.070 of the Texas Health and Safety Code, and whether or not the State "assessed" civil penalties before or after September 1, 2003.

### Section 242.070 of the Texas Health and Safety Code[8]

Before we address the issues presented in this case, a brief overview of the pertinent statute is necessary. In 2003, the Texas Legislature amended section 242.070 of the Texas Health and Safety Code by enacting Texas House Bill 2292.[9] Prior to the legislative change, section 242.070 read:

> The department may not assess more than one monetary penalty under this chapter for a violation arising out of the same act or failure to act, except as provided by Section 242.0665(c). This section does not prohibit the department from assessing a monetary penalty under this chapter and a monetary penalty under Chapter 32, Human Resources Code, for the same act or failure to act.[10]

After the legislative change, section 242.070 now reads:

> The department may not assess more than one monetary penalty under this chapter and Chapter 32, Human Resources Code, for a violation arising out of the same act or failure to act, except as provided by Section 242.0665(c). The department may assess the greater of a

---

7. *Id.* § 242.065(f).

8. *Id.* § 242.070 (Vernon Supp.2004–05).

9. Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 2.60(a), sec. 242.070, 2003 Tex. Gen. Laws 611, 671 (effective Sept. 1, 2003).

10. Act of May 28, 1997, 75th Leg., R.S., ch. 1159, § 1.18, sec. 242.070, 1997 Tex. Gen. Laws 4363, 4374.

monetary penalty under this chapter or a monetary penalty under Chapter 32, Human Resources Code, for the same act or failure to act.[11]

House Bill 2292 contained the above amendment and the following provision: "The change in law made by this section to Section 242.070, Health and Safety Code, applies only to a penalty assessed on or after the effective date of this section." [12]

Prior to the statutory change, DHS was authorized to assess up to two monetary penalties against a nursing facility that was in violation of the regulations; however, after the amendment DHS can only assess one monetary penalty against a nursing facility for each violation arising out of the same act. The State argues that chapter 242 should be construed broadly to effectuate the protection of all nursing facility residents and that by deviating from basic principles of statutory interpretation, the district court failed to apply the correct version of the statute to this case.

### ASSESSMENT OF PENALTIES

 In its second issue the State contends that DHS assessed state civil penalties against Haltom in July 2002, and the trial court erred by dismissing its suit with prejudice. Statutory construction is a question of law that we review de novo. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002). We are not bound by an agency's interpretation of a statute that it administers or enforces. *See Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 299 (Tex.App.-Austin 2001, no pet.). Our primary goal is to ascertain and effectuate the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960

(Tex.1999). When construing a statute, we ascertain the Texas Legislature's intent from the plain meaning of the actual language used. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002). Additionally, the primary rule in statutory interpretation is that a court must give effect to legislative intent, considering the language of the statute, as well as its legislative history, the objective sought, and the consequences that would flow from alternative constructions. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex.2000) (op. on reh'g).

 In our attempt to find the intended meaning of the disputed statutory term, we are mindful that the Code Construction Act [13] erects a presumption that a just and reasonable result was intended; and, the act authorizes us to consider the objective sought to be obtained, former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction of the disputed term.[14] The State in this case argues that "to assess" and "to seek" are equivalent. Because "assess" is not defined by the statute, we look first to its plain meaning beginning with the commonly understood definition. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex.1999). If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. *Id.* at 865. Words and phrases are to be read in context and given their common, everyday meaning unless they have acquired a technical or particular meaning. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998). The plain and common dictionary definitions of the term "assess" includes:

---

11. TEX. HEALTH & SAFETY CODE ANN. § 242.070.

12. *Id.*

13. TEX. GOV'T CODE ANN. § 311.001 (Vernon 1998).

14. *Id.* § 311.023.

1) to determine the rate or amount of (as a tax, charge, or fine)

2a) to determine the amount of and impose (as a tax, charge, or fine) according to an established rate or apportionment

2b) to subject to a tax, charge, or levy so determined

3) to make an official valuation or estimate of

4) to analyze critically and judge definitely the nature, significance, status, or merit of: determine the importance, size, or value of.[15]

The State argues that since DHS determined whether or not to assess penalties and made the recommendation of what penalties to seek before September 1, 2003, it properly assessed the relevant penalties prior to the revised statute's effective date. The State's argument finds support under the first definition set out above. However, Haltom points to the definition listed above in 2a and contends that the State did not assess penalties prior to September 1, 2003. In support of its argument, it argues that an example of a penalty being properly assessed against a facility is when DHS gave notice to them on July 12, 2002 of the decision to pursue a penalty and provided them with a definite and determined amount. In contrast to the current issue, Haltom argues that the penalty at issue in this case was not assessed prior to September 1, 2003 and still has not been assessed. Haltom argues that no notice or amount has been given concerning the penalty at issue, and that a penalty that has not, and cannot be calculated is not a penalty that has been assessed against a facility. Therefore, Haltom contends that the State does not meet the definition found in 2a above. Furthermore, Haltom points out that suit was not filed by the State until September 17, 2003.

■ Because both definitions of the word "assess" could apply in the present case it is apparent that the term "assess" is ambiguous as applied to these facts and we cannot conclude the meaning from the section of the statute itself. Therefore, we also consider two additional uses of the term in this case. First, section 242.067(g) of the health and safety code uses "assess" in a chronological context. Tex. Health & Safety Code Ann. § 242.067(g). It states:

If the person charged with the violation consents to the administrative penalty recommended by the department, does not timely respond to a notice sent under Subsection (c) or (e), or fails to correct the violation to the department's satisfaction, the commissioner or the commissioner's designee shall *assess* the administrative penalty recommended by the department.

*Id.* (emphasis added). Rules of statutory construction regarding a statute relating to the same subject matter are intended to be construed consistently and to operate in harmony. *Moses v. Fort Worth Indep. Sch. Dist.*, 977 S.W.2d 851, 853 (Tex.App.-Fort Worth 1998, no pet.). Unless there is language clearly indicating a contrary intent, words or phrases used in different parts of a statute are presumed to have the same meaning throughout, and where the meaning in one instance is clear, this meaning will be attached in all other instances. *S.W. Props., L.P. v. Lite–Dec of Tex., Inc.*, 989 S.W.2d 69, 71 (Tex.App.-San Antonio 1998, pet. denied).

Second, DHS' interpretation and application of the term "assess" is found in its annual report to the Texas Legislature. *See* Texas Department of Human Services, Fiscal Year 2002 Long Term Care Regulatory Annual Report (Feb.2003) at 32. We examine the language in reviewing when and how the agency assesses penalties. The language is as follows:

**15.** Webster's Third New International Dictio- nary 131 (1981).

Penalties assessed are the final actions after the appeal process has been completed (or an agreement to settle has been reached) and a final amount has been decided. The facility is notified of the amount to be paid. There may be a lump sum payment or a monthly payment scheme agreed upon during the appeal or settlement process.

*Id.* Given our commitment to properly interpret statutory language we cannot read "to assess" to mean the same as "to seek" as argued by the State. Looking at section 242.070's objectives, a similar provision in the health and safety code, and the interpretation and application of the term by DHS, these factors support the conclusion that the understanding of the term "assess" without more cannot simply mean to determine. The State's second issue is overruled.

### SAVINGS CLAUSE

In its first issue the State argues that the change in law made by section 242.070 applies only to penalties assessed on or after September 1, 2003, and that the trial court erred by incorrectly applying the amended statute because the penalties at issue in this case were assessed prior to September 1, 2003. Furthermore, the State contends that section 2.60(b) of House Bill 2292 is a specific savings clause that acts to save pending matters such as the penalties at issue in this case. Because we hold that DHS did not "assess" state civil penalties prior to September 1, 2003, we need not address whether section 2.60(b) is a specific savings clause.

### CONCLUSION

We affirm the judgment of the trial court.