# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00573-CV

**Clairmont Longview, LP, A Delaware Limited Partnership; and Clairmont Longview GP, LLC, A Delaware Limited Liability Company, Appellants**

**v.**

**State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. D-1-GV-05-005240, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State's Department of Aging and Disability Services ("DADS") assessed a fine against Clairmont Longview, LP and Clairmont Longview GP, LLC (collectively, "Clairmont"), which operates a nursing facility in Longview, Texas, for violating certain state regulations. A federal agency subsequently ordered Clairmont to pay a fine for violating parallel federal regulations. DADS brought this suit to recover the penalties assessed against Clairmont. Clairmont argues that such double fines are forbidden under section 242.070 of the Texas Health and Safety Code. The trial court granted summary judgment for DADS. We will affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Clairmont is a nursing facility licensed by both the federal and state governments. As a result, Clairmont is subject to both federal and state regulations. On April 8 and 21, 2005, a DADS representative visited the Clairmont facility and discovered violations of multiple state and

federal regulations. On May 2, 2005, DADS imposed a $13,500 fine for the state violations. DADS informed Clairmont that it had the right to file an administrative appeal within twenty days. *See* Tex. Health & Safety Code § 242.067 (West 2005).[1] Clairmont did not do so.

In addition to imposing a penalty itself, DADS informed its federal counterpart, the Centers for Medicare and Medicaid Services ("CMS"), that Clairmont was violating federal regulations. *See* 42 U.S.C.A. § 1395aa(a) (West 2005) (state survey agencies can monitor regulatory compliance for federal government). On May 2, 2005, CMS informed Clairmont that the federal government would cease paying Clairmont for its services and would terminate Clairmont's federal license if Clairmont did not rectify its violations. CMS informed Clairmont that it would also assess a fine for the violations.

On July 7, 2005, DADS again visited Clairmont's facility. This time it found that the facility was complying with regulations. DADS transmitted this news to CMS, and as a result, CMS rescinded its threats to cease payments and terminate Clairmont's federal license. CMS did not rescind its fine, however, and Clairmont eventually settled with CMS for $3,000. CMS transmitted a portion of this payment to the State pursuant to federal regulations. *See* 42 C.F.R. § 488.442(f) (2005).

Though Clairmont paid its CMS fine, it never paid its $13,500 DADS fine. The State sued Clairmont to collect that fine. After a period of discovery, the State moved for both traditional

---

[1] We cite the 2005 regulations that were in effect when this dispute arose. *See Frank v. Liberty Ins. Corp.*, 255 S.W.3d 314, 318 n.3 (Tex. App.—Austin 2008, pet. denied).

2

and no-evidence summary judgment. The trial court granted the State's motion, and Clairmont perfected this appeal.

## STANDARD OF REVIEW

A "traditional" motion for summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.).

A party seeking a "no-evidence" summary judgment, on the other hand, does not bear the burden of establishing its right to judgment by proving a claim, but instead asserts that there is no evidence of one or more essential elements of a claim on which the opposing party will have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). If the nonmovant fails to produce more than a scintilla of probative evidence raising a genuine issue of material fact as to each challenged element on which he has the burden of proof, summary judgment is proper. *Id.*

In reviewing a grant of summary judgment, we take as true evidence favorable to the nonmovant, making every reasonable inference and resolving all doubts in the nonmovant's favor. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

## DISCUSSION

This appeal turns on a single question—namely, whether section 242.070 of the Texas Health and Safety Code precludes DADS and CMS from both collecting fines for a single incident. Section 242.070 states:

> *The department* may not assess more than one monetary penalty under this chapter and Chapter 32, Human Resources Code, for a violation arising out of the same act or failure to act . . . . *The department* may assess the greater of a monetary penalty under this chapter or a monetary penalty under Chapter 32, Human Resources Code, for the same act or failure to act.[2]

Tex. Health & Safety Code Ann. § 242.070 (West Supp. 2008) (emphasis added). On its face, this regulation precludes DADS from assessing multiple fines for a single incident; it does not preclude DADS from assessing a fine if a separate federal agency like CMS assesses its own fine. Clairmont nevertheless argues that the statute precludes DADS from assessing a fine if CMS also assesses one.

Clairmont's argument turns on the assertion that DADS effectively "assessed" a fine when the State received a portion of the $3,000 fine that Clairmont paid CMS. The State ultimately received that money, however, only because federal regulations required as much. *See* 42 C.F.R. § 488.442(f). The State did not ask CMS to fine Clairmont, nor did it ask for a portion of Clairmont's payment. In no sense, then, did DADS itself, as opposed to CMS, "assess" the fine.

---

[2] Health and Safety Code section 242.002(4) defines "Department" to mean the Texas Department of Human Services. DADS took over the Department of Human Services's relevant regulatory functions on September 1, 2004. *See* Tex. Hum. Res. Code § 161.071(6) (West Supp. 2008). Thus, like the parties, we interpret "Department" in section 242.002(4) to refer to DADS.

4

In fact, DADS may only "assess" a penalty in one of three ways: by imposing its own administrative penalty; by recommending to CMS that CMS impose a federal civil penalty; or by recommending to the Texas Attorney General that he impose a state civil penalty. *See State v. Haltom Med. Investors*, 153 S.W.3d 664, 666-67 (Tex. App.—Fort Worth 2004, no pet.). Here, DADS chose the first option; it did not recommend that CMS impose a penalty or that the Attorney General impose a penalty. Clairmont nevertheless insists that CMS's independent decision to impose a fine counts as an "assessment" that precludes DADS from assessing its own administrative penalty.

Besides requiring an unnatural reading of "assess" and defying the above-cited case law, Clairmont's argument yields two additional consequences that show a contrary legislative intent. First, Clairmont's position would require that DADS await the outcome of any independent enforcement action taken by CMS, no matter how belated or protracted, before DADS could pursue its own. Here, DADS assessed a fine on May 2, 2005, that became final on May 22, 2005, when Clairmont's time to appeal expired. *See* Tex. Health & Safety Code § 242.067(d). CMS did not indicate that it would impose its own fine on Clairmont until four days later, and it did not actually impose that fine until roughly six months after that. Under Clairmont's interpretation of section 242.070, DADS either had to (1) await the outcome of the federal process—notwithstanding that DADS finalized its process before the federal process even began—before determining whether it could assess its own fine, or (2) accept that its already-finalized penalty could later be voided at any point by independent federal action. Accepting Clairmont's position would mean that any "final" administrative penalty assessed by DADS could be voided retrospectively by a federal agency's

5

unilateral action. There is no reason to believe that the Texas legislature intended to impose such a limitation on a State agency. A much more logical interpretation of section 242.070, and one that accords with existing case law, is that a CMS fine counts as an "assessment" by DADS *only* if DADS recommends it. *See Haltom*, 153 S.W.3d at 666 (DADS can "assess" penalty by recommending that CMS pursue one).

Second, as the district court noted, Clairmont's interpretation of section 242.070 creates an internal inconsistency. The first sentence of section 242.070 permits DADS to assess a single penalty, and the second sentence permits DADS to choose the greater of a penalty under the Health and Safety Code or the Human Resources Code. *See* Tex. Health & Safety Code § 242.070. If a CMS fine counted as an "assessment" in the first sentence, however, CMS's imposition of a fine would necessarily deprive DADS of the discretion guaranteed it by the second sentence. Moreover, DADS would be powerless to object if, as here, CMS chose to pursue a lesser penalty, a state of affairs irreconcilable with the statute's clear intent that DADS be able to choose a greater penalty. We presume that the legislature did not intend to nullify half the statute at issue. *See* Tex. Gov't Code § 311.021 (West 2005) (presumption that entire statute is intended to be effective).

In sum, we hold as a matter of law that Texas Health and Safety Code section 242.070 only precludes DADS from assessing multiple penalties itself. The statute does not preclude DADS from assessing a penalty when a federal agency, acting independently and of its own accord, assesses its own penalty.

**CONCLUSION**

For the reasons discussed above, we affirm the district court's judgment.

6

_____

                              J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   July 14, 2009