**Opinion filed March 6, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00260-CV

_____

## IN THE INTEREST OF M.N.M., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11233-CX**

## O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of Appellants, the mother and father of M.N.M.[1]  Both parents appealed.  Appellants challenge the sufficiency of the evidence to support the trial court's finding that termination of their parental rights is in M.N.M.'s best interest.  They further contest the trial court's finding that the Department made "reasonable efforts to return the child" prior to commencement of the final termination hearing.  We affirm the trial court's order of termination.

---

[1]We use initials to refer to the child and family members.  *See* TEX. R. APP. P. 9.8(b).

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2024). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellants committed at least one of the acts listed in Section 161.001(b)(1). Specifically, that Appellants committed the acts described in subsections (E), (M), and (N), respectively, by:

(1)    engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child;

(2)    having their parent-child relationship terminated with respect to another child based on a finding that their conduct was in violation of Paragraph (D) or (E) one year or less before the Department of Family and Protective Services (the Department) filed its petition seeking termination of the parent-child relationship between Appellants and M.N.M.; and

(3)    constructively abandoning the child who had been in the permanent or temporary managing conservatorship of the Department for not less than six months, and despite the Department's reasonable efforts to return the child to Appellants, did not regularly visit or maintain significant contact with the child, and demonstrated an inability to provide the child with a safe environment.

*See id.* § 161.001(b)(1)(E), (M), (N), § 161.001(d-1). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellants' parental rights was in the child's best interest. *See id.* § 161.001(b)(2).

2

On appeal, Appellants challenge the trial court's finding under Section 161.001(f) that the Department made reasonable efforts to return the child to them, but that a continuing danger prevented the child's return. Appellants also contest the trial court's best-interest finding under 161.001(b)(2) as being unsupported by legally or factually sufficient evidence. They do not contest the trial court's findings as to Section 161.001(b)(1)(E), (M) or (N).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest

analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

On January 6, 2023, Mother's parental rights were terminated to her older children and Father's parental rights were terminated to his older child that he shared with Mother.[2] *See In re K.S.*, 2023 WL 3872636, at *1–3. The Department intervened again on June 5, 2023, the day M.N.M. was born, because Mother and M.N.M. tested positive for marihuana and cannabinoids. Father submitted to drug testing a week later and was also positive for marihuana.

---

[2]Father was the biological father of one of Mother's older children, L.M., but not K.S. The trial court terminated Appellants' parental rights to L.M., Mother's parental rights to K.S., and the parental rights of K.S.'s unknown father. *See In re K.S.*, No. 11-23-00007-CV, 2023 WL 3872636, at *1–2 (Tex. App.—Eastland June 8, 2023, pet. denied) (mem. op.).

5

Angela Goodloe-Ewing, the family-based safety services (FBSS) caseworker, testified that Appellants were ordered to participate in services through the Texas Family First (TFF) pilot program. *See* FAM. §§ 262.402–.410 (authorization and implementation of the Family Preservation Services Pilot Program). P.B., M.N.M.'s paternal great-grandmother, was the designated safety monitor charged with twenty-four-hour supervision of the child. Because Appellants had no housing at the time, they lived in P.B.'s home with the child.

During the FBSS case, Appellants engaged in counseling and tested negative for illegal substances, but M.N.M. tested positive for marihuana on September 22, 2023. According to the drug test results, M.N.M.'s marihuana metabolite level was 5.8 picograms per milligram (pg/mg), which the Department found "deeply concerning" and indicative of continued marihuana exposure. A Department supervisor also witnessed Appellants with M.N.M. at the store without P.B. in violation of the safety plan.

Despite the violations of the safety plan, the Department did not seek removal until October 2023 after Appellants were arrested for theft. M.N.M. was with them while they were caught shoplifting, but P.B. was not. M.A., M.N.M.'s maternal grandmother, was permitted to take temporary custody of M.N.M. when Appellants were arrested. However, due to her extensive criminal history and history with the Department, M.A. was not a suitable caregiver.

Prior to M.N.M.'s removal, Father had been convicted of unauthorized use of a vehicle and engaging in organized criminal activity, both state jail felonies, and was placed on community supervision. *See* TEX. PENAL CODE ANN. § 31.07 (West 2016), § 71.02(b) (West Supp. 2024). His community supervision was revoked in April 2024, due in part to committing theft on October 23, and he was sentenced to confinement in a state jail facility for a term of fifteen months. Mother was also on community supervision for a state jail felony at the time she and Father committed

the October 2023 theft and was sentenced to twelve months' confinement on December 5, 2023.

The trial court conducted the final hearing on September 3, 2024. Jeremiah Johnson, the assigned caseworker after removal, testified that Appellants' Family Plans of Service were filed with the trial court on December 8, 2023, then were amended, modified, and adopted as court orders. Approximately one month after finalizing the service plans, Appellants were confined in the Taylor County Jail, then transferred to state jail facilities to serve their sentences. Johnson visited Appellants at the Taylor County jail monthly until they were transferred.

The primary goal as stated in both service plans was family reunification and required Appellants to participate in a parenting class, psychological evaluation, substance abuse assessment, drug testing, and weekly supervised visits with M.N.M. Johnson supervised Appellants' weekly visits with M.N.M. for "maybe a month until they were incarcerated." He also sent referrals for their psychological evaluations and substance abuse assessments prior to their incarceration but did not arrange for Appellants to complete services thereafter.

After removal, M.N.M. was placed with a foster family who was willing to adopt her. Her foster mother testified that M.N.M. is a "wonderful" fit with the family, and "interact[s] really well" with the other three children in the home, one of whom is M.N.M.'s half-sibling.

The trial court terminated Appellants' parental rights under Section 161.001(b)(1)(E), (M), and (N), and found termination to be in the best interest of the child. In a separate section of the termination order, the trial court found by clear and convincing evidence that the Department made reasonable efforts to return the child before the final hearing commenced, but that a continuing danger remained in the home that prevented the child's return. In support of its finding, the trial court found that the Department: (1) created family service plans that were

"narrowly tailored to address any specific issues identified"; (2) "made a referral for services, provided services, or paid for services"; (3) "conducted searches and contacted relatives of the parents for potential placement, however no appropriate kinship placement was located"; and (4) "was unable to return the child home due to both parents being incarcerated and there being no home." This appeal followed.

*Section 161.001(f): "Reasonable Efforts to Return the Child"*

Appellants contend in their second issue that insufficient evidence supports the trial court's finding that the Department made reasonable efforts to return the child before the final termination hearing. As an initial matter, we note that paragraph (N)(i) requires proof that the Department "made reasonable efforts to return the child to the parent." FAM. § 161.001(N)(i). However, we conclude that the trial court's finding as to subsection (N) is not dispositive of Appellants' challenge to Section 161.001(f) on appeal. *See In re Z.M.M.*, 577 S.W.3d 541, 542–43 (Tex. 2019) ("Courts must broadly construe issues to reach all core and substantive questions such that the merits of an appeal are addressed when reasonably possible to provide the party with a meaningful appeal.").

For parental termination suits filed by the Department on or after September 1, 2023, the trial court may not terminate the parent-child relationship unless:

> the court finds by clear and convincing evidence and describes in writing with specificity in a separate section of the order that . . . the department made reasonable efforts to return the child to the parent before commencement of a trial on the merits and despite those reasonable efforts, a continuing danger remains in the home that prevents the return of the child to the parent[.]

Act of May 25, 2023, 88th Leg., R.S., ch. 675, §§ 1, 7, 2023 Tex. Sess. Law Serv. 1644–45 (codified at FAM. § 161.001(f)).

"Statutory construction is a question of law, and review is conducted de novo." *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 133 (Tex. 2013). "Our ultimate purpose when construing a statute is to discover the Legislature's intent,"

8

and the statute's text is the best indication thereof. *Id.* We must not interpret the statute in a manner that renders any part or provision meaningless or superfluous. *Columbia Med. Ctr. of Las Colinas, Inc., v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008). "In ascertaining a term's meaning, courts look primarily to how that term is used throughout the statute as a whole." *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). Statutory terms should be interpreted consistently in every part of an act. *Id.* Thus, "courts should not give an undefined statutory term a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone." *Id.*; *see also State v. Haltom Med. Invs., L.L.C.*, 153 S.W.3d 664, 669 (Tex. App.—Fort Worth 2004, no pet.) ("Unless there is language clearly indicating a contrary intent, words or phrases used in different parts of a statute are presumed to have the same meaning throughout, and where the meaning in one instance is clear, this meaning will be attached in all other instances.").

The phrase "reasonable efforts to return the child to the parent" is not new to Section 161.001 with the enactment of subsections (f) and (g)—as we have said, it appears in Section 161.001(b)(1)(N), known as the "constructive abandonment" statutory termination ground. *See* FAM. § 161.001(b)(1)(N). We presume that the Texas Legislature enacted Section 161.001(f) with knowledge of the prevailing judicial understanding of "reasonable efforts to return the child to parent" under Section 161.001(b)(1)(N). *See JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 486 (Tex. 2019) (construing statutory text under the presumption that the legislature enacted the statute "with full knowledge of the existing condition of the law," including common law, "and with reference to it") (quoting *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 677 (Tex. 2007)). As such, when addressing whether the Department proved by clear and convincing evidence that it made reasonable efforts to return M.N.M. to Appellants, we look to relevant judicial determinations

regarding the Department's reunification efforts under Section 161.001(b)(1)(N). *See In re Facebook, Inc.*, 625 S.W.3d 80, 92 (Tex. 2021) ("[W]hen faced with a statute that reasonably lends itself to multiple readings, we promote stability and predictability in the law by adopting the position unanimously taken by other courts if the text permits.").

The Department's implementation of a family service plan is generally considered a reasonable effort to return the child to the parent. *See, e.g.*, *A.D. v. Tex. Dep't of Fam. & Protective Servs.*, 673 S.W.3d 704, 714 (Tex. App.—Austin 2023, no pet.) (finding that the existence of a service plan, the caseworker's repeated attempts to communicate with the mother, and attempt to initially place the child with a family member constituted reasonable efforts); *In re L.C.M.*, 645 S.W.3d 914, 921 (Tex. App.—El Paso 2022, no pet.); *In re L.E.R.*, 650 S.W.3d 771, 786 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *In re J.W.*, 615 S.W.3d 453, 463, 465 (Tex. App.—Texarkana 2020, pet. denied); *In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied); *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.); *see also In re L.L.Y.B.*, No. 04-24-00426-CV, 2024 WL 5151156, at *3 (Tex. App.—San Antonio Dec. 18, 2024, no pet. h.) (mem. op.); *In re K.S.G.*, No. 07-23-00452-CV, 2024 WL 1184743, at *3 (Tex. App.—Amarillo Mar. 19, 2024, pet. denied) (mem. op.); *In re S.P.*, No. 09-21-00296-CV, 2022 WL 318441, at *7 (Tex. App.—Beaumont Feb. 3, 2022, no pet.) (mem. op.). However, evidence of a service plan is not the exclusive means of establishing the Department's reasonable efforts to return the child. *See In re J.G.S.*, 550 S.W.3d 698, 704–05 (Tex. App.—El Paso 2018, no pet.); *see also In re Y.T.A.-D.*, No. 14-24-00161-CV, 2024 WL 3715392, at *7 (Tex. App.—Houston [14th Dist.] Aug. 8, 2024, no pet.) (mem. op.). Ultimately, "the issue is whether the Department made reasonable efforts, not ideal efforts." *In re J.A.*, No. 04-20-00242-CV, 2020 WL 5027663, at *2 (Tex. App.—San Antonio Aug. 26, 2020, no pet.) (mem. op.); *In re*

*G.K.G.A.*, No. 01-16-00996-CV, 2017 WL 2376534, at *5 (Tex. App.—Houston [1st Dist.] June 1, 2017, pet. denied) (mem. op.).

In asserting that the Department fell short of reasonable reunification efforts, Appellants refer to Johnson's failure to facilitate counseling, evaluations, or other services for Appellants while they were in custody. It is true that the Department did not put forth "ideal efforts" to ensure Appellants' successful completion of their services while incarcerated. But we are not evaluating the sufficiency of the evidence to support the trial court's finding under subsection (N), and Appellants' parental rights were not terminated under subsection (O) for failing to comply with their service plans. The issue before us is whether the Department's reunification efforts were reasonable under the circumstances. *See* FAM. § 161.001(f). Johnson sent referrals for services prior to Appellants' incarceration and supervised weekly visits with M.N.M. Once Appellants were confined in the Taylor County Jail, Johnson met with them monthly, had them sign the necessary releases, and ensured that Appellants eventually completed Child Placement Resources Forms.

Even so, the implementation of a service plan is not "absolutely required" to show reasonable efforts to return the child to the parent. *L.C.M.*, 645 S.W.3d at 921. In constructive abandonment cases involving incarcerated parents, "the Department's undertaking of reasonable reunification efforts 'does not necessarily mean the child must be physically delivered to the incarcerated parent.'" *Id.* at 921 (quoting *J.G.S.*, 550 S.W.3d at 704). Instead, "efforts to place the child with relatives may constitute legally and factually sufficient evidence to support the trial court's finding that the Department made reasonable efforts." *Id.* (quoting *J.G.S.*, 550 S.W.3d at 705); *see also In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.) (an incarcerated parent may leave the child with a spouse or relative, and the child could be returned from the Department's custody); *see also In re K.J.T.M.*, No. 06-09-00104-CV, 2010 WL 1664027, at *3 (Tex. App.—Texarkana

Apr. 27, 2010, no pet.) (mem. op.) (the Department's efforts to place the child with a relative while the parent is incarcerated, "although futile," supported finding under subsection (N)).  For example, in *In re J.G.S.*, the Eighth Court of Appeals held that placing the child with the incarcerated father's relative "show[ed] that the Department has made substantial efforts" to return the child.  *J.G.S.*, 550 S.W.3d at 705.  It applied the same logic in 2022 when an incarcerated father asserted on appeal that the absence of a service plan proved the Department did not make reasonable reunification efforts.  *L.C.M.*, 645 S.W.3d at 921–22.  The Department attempted to engage the father during his incarceration and after his release, and "explore[d] the possibility of placing [the child] with Father's other relatives."  *Id.* at 921.  Consequently, the court found that "the trial court could have found that the Department made reasonable efforts to return the child to Father under the circumstances." *Id.* at 922.

Deportation has been equated to imprisonment in assessing the Department's reasonable efforts to return the child.  *See In re H.J.Y.S.*, No. 10-19-00325-CV, 2019 WL 8071614, at *5 (Tex. App.—Waco Feb. 26, 2019, pet. denied) (mem. op.).  In *H.J.Y.S.*, the deported mother appealed the termination of her parental rights, asserting that the Department failed to make reasonable efforts to return the child. *Id.* at *6.  The Department caseworker and supervisor testified that they were unable to offer the mother services due to "perceived auditory issues and a language barrier."  *Id.*  As a result, the caseworker and supervisor testified that they did not feel that they made reasonable efforts to return the child.  *Id.*  Nevertheless, the Tenth Court of Appeals concluded that "the Department made every effort to place H.J.Y.S. with relatives."  *Id.*  The child was placed with the mother's brother "for approximately 11 months during the initial case before [he] relinquished" the child back to the Department and he was placed back with the foster parents.  *Id.*  The court held that "[t]he Department's efforts to place [the child] with relatives may

constitute legally and factually sufficient evidence to support the trial court's finding that the Department made reasonable efforts" to return the child to the mother. *Id.*

At trial, the Department asked Goodloe-Ewing whether she "[felt] like [she] made reasonable efforts to avoid removal," and in answering in the affirmative, she cited the Department's supportive and patient oversight during the FBSS case. Appellants urged the trial court to ignore the Department's pre-petition involvement, arguing that the phrase, "return the child to the parent before commencement of a trial on the merits," limited the focus to the Department's efforts after filing its petition for temporary managing conservatorship of M.N.M. Yet the statute does not appear to be so restrictive; Section 161.001(f) requires that the Department put forth reasonable efforts to return the child before trial, not between filing the original petition and trial. FAM. § 161.001(f). Moreover, the word "return" does not exclusively connote that the child is in the Department's conservatorship. For example, children may be temporarily placed outside of the home while engaged in FBSS, with the goal of "allowing the child to *return* home instead of entering foster care." *See* FAM. § 262.402(a) (emphasis added); *see also* Vianey Martinez, *Out of the Shadows: The Hidden Foster Care System in Texas*, 101 TEX. L. REV. 1495, 1498–1501 (2023) ("[T]hese pre-petition arrangements are sometimes well-intentioned efforts to prevent more children from entering formal foster care."). Thus, in determining whether the Department's reunification efforts were reasonable under the circumstances, the trial court need not disregard the Department's earnest commitment to preserving the parent-child relationship prior to initiating suit. In the present case, the Department's dedication to preserving the family by keeping M.N.M. in P.B.'s home was a permissible consideration for the trial court in assessing the reasonableness of the Department's efforts to return the child before trial.

We do not suggest that the Department is absolved of its suboptimal diligence to implement Appellants' service plans during their confinement. An incarcerated parent cannot realistically be expected to complete every requirement of a service plan while in custody, but it is possible to achieve various evaluations, classes, and assessments with the assistance of the caseworker. *See, e.g.*, *In re J.R.*, No. 11-24-00185-CV, 2024 WL 5160456, at *2–3 (Tex. App.—Eastland Dec. 19, 2024, no pet.) (mem. op.). Despite Johnson's inaction in facilitating services, he maintained consistent contact with Appellants and searched for several possible relatives with whom to place M.N.M. The Department's permanency reports filed in April and July 2024 show that Johnson attempted to contact nearly a dozen potential relatives but several phone numbers were either inaccurate or not in service, and the successfully contacted individuals denied any relation. While Johnson did not attest to any of these facts at trial,[3] the trial court's status hearing order issued on April 12, 2024 was admitted, and contains the following finding:

> The [trial] [c]ourt, having reviewed the report [regarding the notification of relatives] filed under [Section] 263.007, finds that the Department's efforts have been sufficient to identify, locate, and provide information to each adult [explaining, *inter alia*, the option to

---

[3]Texas courts have repeatedly expressed concerns regarding underdeveloped records in parental termination cases and find themselves having to reiterate that "none of the [matters presented at] previous hearings constitute evidence that can support the trial court's order terminating a parent's rights." *See In re E.F.*, 591 S.W.3d 138, 142 & n.4 (Tex. App.—San Antonio 2019, no pet.) ("Given the constitutional rights of the parents in these proceedings, the future placement of the children involved, and the effect such placement will have on their lives . . . we urge the trial court and the parties to more completely develop the evidence at trial, so the appellate record is commensurate with the finality of parental termination."); *see also In re Z.R.M.*, 665 S.W.3d 825, 829 & n.6 (Tex. App.—San Antonio 2023, pet. denied) (collecting cases and "reluctantly conclud[ing] . . . that the evidence is legally and factually sufficient to have permitted the trial court['s]" best interest finding despite the paltry record); *In re M.A.J.*, 612 S.W.3d 398, 417 n.24 (Tex. App.—Houston [1st Dist.] 2020, pet. denied); *In re M.R.*, No. 13-22-00304-CV, 2022 WL 17844215, at *5–6 (Tex. App.—Corpus Christi–Edinburg Dec. 22, 2022, no pet.) (mem. op.) (The best interest determination was not supported by sufficient evidence, which "spanned only approximately fifty-eight pages of the reporter's record, contained only one exhibit which was unrelated to [the appellant-mother], and included testimony from only two witnesses."). "The only evidence that can support the trial court's order is [the] evidence admitted at trial." *E.F.*, 591 S.W.3d at 142 n.4.

participate in the care and placement of the child, as] described in [Section] 262.1095(a).

Orders issued prior to trial and the Department's reports on which it relied are "not evidence for all purposes," but we may consider such information in certain situations. *See In re E.C.R.*, 402 S.W.3d 239, 248–49 (Tex. 2013) (considering the affidavit in support of removal, "even if not evidence for all purposes," to "show[] what the trial court relied on in determining whether removal was justified"); *In re D.L.W.*, No. 14-22-00654-CV, 2023 WL 1460548, at *6–7 (Tex. App.—Houston [14th Dist.] Feb. 2, 2023, no pet.) (mem. op.) ("The Department's evidence and the trial court's orders establish that the children were removed from Father under chapter 262 for abuse or neglect."); *In re A.J.Z.*, No. 04-20-00218-CV, 2020 WL 5913845, at *3 (Tex. App.—San Antonio Oct. 7, 2020, no pet.) (mem. op.) (considering the trial court's orders issued prior to trial in evaluating the evidentiary sufficiency of subsection (O)); *In re J.G.*, No. 12-19-00301-CV, 2020 WL 827592, at *4 (Tex. App.—Tyler Feb. 19, 2020, pet. denied) (mem. op.) (considering the Department's status report and removal affidavit as evidence that the child was removed for abuse or neglect under Chapter 262 in assessing the evidentiary sufficiency of predicate ground (O)). Ideally, the Department's reunification efforts are presented at the termination hearing through a caseworker's testimony and/or through other relevant, admissible evidence. But notwithstanding the lack of initial clarity, Johnson's efforts to place the child with relatives cannot be ignored.

The reasonableness of the Department's reunification efforts must also be considered against the backdrop of Appellants' recent history and engagement, or lack thereof, with the Department and its reunification efforts. Appellants' parental rights to their other children were terminated on January 6, 2023. According to the order, the trial court found by clear and convincing evidence that they endangered the other children under subsections (D) and (E) and failed to comply with the

provisions of their court-ordered service plans. *See K.S.*, 2023 WL 3872636, at *2–3. Specifically, Appellants failed to acquire a legal source of income and safe housing, continued testing positive for marihuana, amphetamine, and methamphetamine, and did not engage in counseling. *Id.* at *2–3. Following the other children's removal in that case, they were placed with an unrelated foster family who hoped to adopt them. *Id.* at *3. M.N.M. was born five months later, and her positive drug test at birth prompted another investigation. The Department implemented a safety plan to avoid removal and designated P.B. as the safety monitor. During that time, M.N.M. tested positive for marihuana, and P.B. wrongly permitted Appellants to have unsupervised contact with M.N.M., including when they were arrested for shoplifting.

Appellants' incarceration rendered them physically unable to care for the child, and they had no home in which the child could reside during their absence. P.B. and M.A. were eliminated as safe placement options—M.A. based on her criminal history and previous involvement with the Department, and P.B. due to her repeated inability to supervise the child or keep her from ingesting marihuana prior to removal. The record therefore reflects that the Department attempted to find a safe, stable adult relative to care for M.N.M. until Appellants' release, to no avail. Given the unique circumstances of this case, we conclude that the trial court could have formed a firm conviction or belief that the Department made reasonable efforts to return M.N.M. to Appellants, but a continuing danger prevented the child's return. *See* FAM. § 161.001(f); *see also, e.g.*, *In re E.L.S.*, 2023 WL 2396345, at *3 (Tex. App.—San Antonio Mar. 8, 2023, no pet.) (mem. op.) (The Department's actions that constituted reasonable efforts included "creating a service plan, ensuring [the father] received it and understood it, meeting with him monthly to review his progress, and investigating the placement options [the parents] offered.").

Accordingly, we overrule each parent's second issue on appeal.

*The Best Interest of the Child Determination*

Appellants challenge the legal and factual sufficiency of the evidence to support the trial court's finding that termination of their parental rights is in the best interest of M.N.M. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellants' parental rights was in the best interest of M.N.M. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Put differently, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). "[E]vidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.).

As we have said, in its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the child

is returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("The factfinder may consider prior CPS history of neglect, drug use, or lack of care for the children."). Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered by the trial court in its best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Therefore, the trial court could properly consider Appellants' history of drug use, criminal conduct, history with the Department and their other children, and M.N.M.'s positive drug tests in determining whether the termination of their parental rights was in the best interest of M.N.M. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

Notably, as we have said, Appellants do not contest the trial court's findings under Sections 161.001(E), (M), and (N). They are therefore binding on this court as valid grounds for termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re J.G.*, 592 S.W.3d 506, 506 n.2 (Tex. App.—Waco 2019, no pet.); *see also In re L.S.*, No. 10-22-00119-CV, 2022 WL 3655395, at *1 (Tex. App.—Waco Aug. 24, 2022, no pet.) (mem. op.) (The appellant challenged "only the endangering conditions and endangering conduct grounds . . . but not constructive abandonment," and "[b]y failing to challenge the finding under Subsection (N), [the appellant] waived any complaint about the sufficiency of the evidence to support that finding."). The evidence supporting the termination of Appellants' parental rights based on subsections (E), (M), and (N) show that Mother and M.N.M. tested positive for marihuana when M.N.M. was born, and Father tested positive for marihuana a week later. This evidence not only supports the uncontested

endangerment finding; the trial court could have rationally concluded that termination was in M.N.M.'s best interest based on Appellants' history of drug abuse, especially considering M.N.M.'s positive drug tests at birth and during the FBSS case. *See C.H.*, 89 S.W.3d at 27–28 (Past performance as a parent "could certainly have a bearing on [a parent's] fitness to provide for" his or her child.). Appellants' conduct undoubtedly "expose[d] the child[] to the possibility that [they] may be impaired or imprisoned," which weighs in favor of finding that termination of Appellants' parental rights was in M.N.M.'s best interest. *See J.S.*, 687 S.W.3d at 551; *In re Z.J.B.*, No. 14-18-00759-CV, 2019 WL 347474, at *5, *7 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, pet. denied) (mem. op.) (a parent's single positive drug screen and his failure to submit to three additional drug screenings suggested continued illegal drug use by him and weighed in favor of the trial court's best-interest finding); *see also In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("Parental drug abuse reflects poor judgment and may be a factor to consider in determining a child's best interest.").

Appellants' criminal conduct *engaged in while the child was with them* endangered the child and resulted in their imprisonment and inability to provide M.N.M. with a safe and stable home. After the Department implemented the safety plan in the FBSS case, Appellants were placed on community supervision for felony offenses that they committed in January and March 2023. They nevertheless brought M.N.M. to a store without P.B. and were arrested for shoplifting, which resulted in the revocation of their community supervision and incarceration. In addition to Appellants' recent criminal conduct, their criminal history and history with the Department that coincided with their drug use supports the trial court's best-interest finding. *See In re R.R.A.*, 687 S.W.3d 269, 281 (Tex. 2024) ("When a pattern of drug use is coupled with credible evidence of attendant risks to employment, housing, or prolonged absence from the children, a factfinder reasonably can find

endangerment to the child's physical or emotional well-being."); *In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (parents' years of drug use, extensive criminal history, and history with the Department supported the trial court's best-interest finding); *In re L.R.*, No. 11-22-00332-CV, 2023 WL 3633700, at *2–3 (Tex. App.—Eastland May 25, 2023, pet. denied) (mem. op.) (mother's "significant criminal history" and termination of her parental rights to another child supported best-interest finding).

While Mother was pregnant with M.N.M., Mother's parental rights to her other children were terminated and Father's parental rights to his other child were terminated due in part to their persistent drug use. *See K.S.*, 2023 WL 3872636, at *2–3. The evidence in that case showed that Appellants "engaged in substance abuse in K.S.'s and L.M.'s presence," and "K.S. tested positive for marihuana and cocaine immediately prior to being removed from [Appellants'] care." *Id.* at *3. The evidence here, in support of the uncontested findings under paragraphs (E), (M), and (N), demonstrates Appellants' inability to provide a stable home and meet M.N.M.'s emotional and physical needs now and in the future, that Appellants are a danger to the child's physical and emotional well-being now and in the future, and that the existing parent-child relationship is not a proper one. *See id.* Therefore, the trial court could have formed a firm conviction or belief that terminating Appellants' parental rights to M.N.M. was in the child's best interest.

That M.N.M. is thriving under her foster family's care is additional evidence that weighs in favor of the trial court's best-interest finding. *See id.* Her foster mother testified that M.N.M. calls her foster parents "momma" and "daddy," "loves being outside" and "play[ing] in the dirt," and is "ahead of her [developmental] milestones." Her foster parents hope to adopt her and "want to see [M.N.M.] thrive and do well and become all that she can be." By contrast, Appellants have not demonstrated the ability to provide a safe, drug-free home environment for M.N.M.

Before they were incarcerated, neither had a legal source of income or housing. According to their service plans, neither parent maintained stable employment and Father "show[ed] no interest in finding employment. *See, e.g.*, *In re S.Y.*, No. 07-23-00206-CV, 2023 WL 5209104, at *3 (Tex. App.—Amarillo Aug. 14, 2023, no pet.) (mem. op.) (father's criminal history and pending criminal issues, lack of a stable source of income supports the trial court's best-interest finding).

Upon considering the record as it relates to Appellants' actions and inactions, the emotional and physical danger to M.N.M. now and in the future, Appellants' parental abilities, their criminal history, and their history with the Department, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellants' parental rights is in the best interest of M.N.M. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule each parent's first issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS

JUSTICE


March 6, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.